**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, et al., | No. CV-25-00860-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| GlaxoSmithKline LLC, | |
| Defendant. | |

Congress created the Medicaid Drug Rebate Program ("MDRP") with the passage of the Omnibus Budget Reconciliation Act of 1990. 42 U.S.C. § 1396r-8; *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 652 (2003). "The purpose of creating the MDRP was to reduce the cost of prescription drugs to the Medicaid program and to ensure that Medicaid recipients had access to a variety of prescription drug choices." *Sarepta Therapeutics, Inc. v. Health Care Auth.*, 497 P.3d 454, 457 (Wash. App. 2021) (citing H.R. Rep. No. 101-881 at 96-97 (1990)).

Under the MDRP, to receive reimbursement for branded drugs, pharmaceutical manufacturers were always required to enter into agreements to rebate a portion of the Medicaid reimbursement to the state agency (which was shared with the federal agency). *See* 42 U.S.C. § 1396r-8; *Pharm. Rsch. & Mfrs of Am.*, 538 U.S. at 652. Federal law establishes the method for determining the rebate, which includes a fixed and inflationary component. 42 U.S.C. § 1396r-8(c). The fixed rebate requires manufacturers to pay up to 23.1 percent of the average paid price. § 1396r-8(c)(1)(B). The inflationary component

requires the manufacturers to rebate the difference between the drug's current price and the inflation-adjusted price of the drug when it was originally released. § 1396r-8(c). The inflation-adjusted rebate was capped at 100 percent of the drug's average price—protecting manufacturers from selling its pharmaceuticals at a loss to Medicaid. *See* § 1396r-8(c)(2)(D). (Doc. 1-3 ¶¶ 65-67.)

Under the American Rescue Plan Act of 2021, Congress changed the landscape of Medicaid pharmaceutical reimbursement. *See* American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 9816, 135 Stat. 4, 216 (2021). The American Rescue Plan amended the MDRP and removed this inflation-adjusted rebate cap protection effective January 1, 2024—requiring pharmaceutical manufacturers to make difficult business decisions, including discontinuing a profitable drug or pay the federal government with each sale of this drug to a Medicaid beneficiary.[1] *See id.* (Doc. 1-3 ¶¶ 74-75.)

Defendant GlaxoSmithKline LLC ("GSK") sold a branded drug called Flovent since the early 2000s. (*Id.* ¶¶ 36-38.) In 2022, GSK launched a generic version of Flovent (the "Authorized Generic"). (*Id.* ¶¶ 1, 75; Doc. 1 at 3 (clarifying that GSK launched the Authorized Generic in May 2022).) On January 1, 2024, GSK stopped selling its Flovent-branded products, but the Authorized Generic was and is still available for sale. (Doc. 1-3 ¶ 75; Doc. 1 at 3.)

As a result, the State of Arizona filed a single-count civil complaint in Arizona Superior Court against GSK alleging a violation of the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq*. ("AZCFA"). (Doc. 1-3.) It alleges that GSK engaged in unfair practices when it "suddenly discontinued one of the most prescribed asthma medications in the country, Flovent, and replaced it with a materially identical [A]uthorized [G]eneric" to "avoid the obligation to pay rebates to Medicaid under [the MDRP]." (*Id.* ¶¶ 1, 4.) In a nutshell, the State sues GSK for making a business decision.

---

[1] *See, e.g.*, Elizabeth Williams, *What Are the Implications of the Recent Elimination of the Medicaid Prescription Drug Rebate Cap?*, Kaiser Family Foundation (Jan. 16, 2024), https://www.kff.org/policy-watch/what-are-the-implications-of-the-recent-elimination-of-the-medicaid-prescription-drug-rebate-cap/ (Finding insulin manufactures cut prices by as much as 80 percent and Eli Lilly and Novo Nordisk were expected to pay $430 million and $350 million, respectively, in additional Medicaid rebates in 2024).

GSK filed a notice of removal claiming that the State's claim "is based entirely on an alleged violation of public policy set forth in the [MDRP] at 42 U.S.C. § 1396r-8," and "thus[,] arising under federal law." (Doc. 1 at 1.) The State filed a motion to remand, arguing that this Court lacks subject matter jurisdiction over this action because it arises solely out of an alleged state-law violation. (Doc. 12.)

The Court will grant the motion to remand (Doc. 12) because it lacks subject matter jurisdiction over this case.[2]

## I.    LEGAL STANDARD

Federal courts possess limited jurisdiction and only have "that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation modified). A case filed in state court may be removed if it is an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case may "arise under" federal law in one of two ways. *Gunn*, 568 U.S. at 257. Either "a case arises under federal law when federal law creates the cause of action asserted," or, under a "special and small category," when a federal issue in the state-law action is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 257-58 (citation modified). "The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675 (9th Cir. 2012) (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)).

"The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction have been met." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022).

## II.    DISCUSSION

In its notice of removal, GSK argues that, though the State's sole theory of liability

---

[2] The Court does not have diversity jurisdiction either. *See* 28 U.S.C. § 1332(a). The State brought the action pursuant to the authority granted by A.R.S. § 44-1528. (Doc. 1-3 ¶¶ 17, 127). Diversity jurisdiction cannot exist when the state is the real party in interest because a state is not a citizen for diversity purposes. *Dyack v. N. Mar. I.*, 317 F.3d 1030, 1037 (9th Cir. 2003); *see also Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981) ("[S]tates are not 'citizens' within the meaning of 28 U.S.C. § 1332.").

is based on a state consumer protection law claim, it arises under federal law "because federal law is a necessary element of the claim for relief" and it meets all four requirements of the test outlined in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and illustrated again in *Gunn v. Milton*, 568 U.S. 251 (2013). (*See* Doc. 1 at 4.)

### A.    Legal Backdrop

Discerning a practical application of the four-part test for federal question jurisdiction arising under a federal issue raised within a purely state-law claim can be challenging for lower courts, in part, because each case presents is own state-law claim, which is then applied to a unique set of facts. In fact, the Chief Justice of the United States described this "special and small category of cases" as "[a] canvas [that] looks like one that Jackson Pollock got to first." *Gunn*, 568 U.S. at 258 (citation omitted). With this in mind, this Court will provide an overview of the more recent United States Supreme Court and Ninth Circuit Court of Appeals cases to provide the legal backdrop for its analysis.

The Supreme Court held in *Grable* that federal question jurisdiction existed for a plaintiff's state-law quiet title claim after the Internal Revenue Service seized and sold plaintiff's land for unpaid taxes. *Grable*, 568 U.S. at 310-11. The plaintiff brought the quiet title action alleging that the IRS failed to give notice of the seizure as required by federal statute. *Id.* The Supreme Court reasoned that the claim necessarily raised a disputed federal issue because the federal statute "appear[ed] to be the only legal or factual issue contested in the case" and was "an important issue of federal law that sensibly belong[ed] in a federal court." *Id.* at 315. The Supreme Court also reasoned the federal issue was substantial because "the Government [had] a strong interest in promptly collecting delinquent taxes." *Id.* at 309. Furthermore, it reasoned that exercising federal jurisdiction for a state-law case "to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

In *Gunn*, the Supreme Court held that federal question jurisdiction did not exist for a state-law legal malpractice action alleging that the attorney failed to raise a patent

1    infringement experimental use claim, resulting in a judgment that the plaintiff's patent was

2    invalid. 568 U.S. at 259. The Supreme Court concluded that the plaintiff did "necessarily

3    raise" a "disputed" federal issue—whether his underlying patent case would have won

4    under an experimental use claim. *Id.* The Supreme Court, however, concluded the federal

5    issue was not substantial because the "substantiality inquiry under *Grable* looks instead to

6    the importance of the issue to the federal system as a whole." *Id.* at 260. The federal issue

7    in *Gunn* only applied to the specific parties and "carri[ed] no such significance," finding

8    that the federal issue was "merely [a] hypothetical" issue. *Id.* at 261.

9         The Ninth Circuit has also addressed removal of actions involving only state-law

10   claims. For instance, in *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012),

11   the Ninth Circuit held that subject matter jurisdiction under § 1331 did not exist when a

12   complaint alleged only violations of the Nevada Deceptive Trade Practices Act but also

13   referenced the federal Home Affordable Mortgage Program and violations under the

14   federal Fair Debt Collection Practices Act. 672 F.3d at 664-65. The Ninth Circuit

15   concluded that the claims did not "necessarily raise" a federal issue because the federal

16   issues were not "pivotal" to Nevada's case. *Id.* at 675. Rather, "[t]he gravamen of the

17   [c]omplaint [was] that Bank of America violated Nevada's [law] through numerous

18   misrepresentations, some about the HAMP program, and some which also violate the

19   FDCPA." *Id.* The Ninth Circuit reasoned that "[w]hen a claim can be supported by

20   alternative and independent theories—one of which is a state law theory and one of which

21   is a federal law theory—federal question jurisdiction does not attach because federal law

22   is not a necessary element of the claim." *Id.* (citation modified). Furthermore, the Ninth

23   Circuit concluded the complaint did not raise "a substantial issue of federal law." *Id.*

24   Specifically, Nevada's consumer protection statute includes a "borrowing provision,"

25   making it a violation of the consumer protection law if a "viola[tion of] a state or federal

26   statute or regulation relating to the sale or lease of goods or services." *Id.* (citation omitted).

27   The Ninth Circuit reasoned that "Nevada's glancing reference to federal law is insufficient

28   to confer federal jurisdiction" under the substantiality test. *Id.*

In *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), the Ninth Circuit held that federal question jurisdiction did not exist when a complaint asserted a single cause of action for public nuisance under California law. 969 F.3d at 906-07. The City alleged that the defendants' "production and promotion of fossil fuels ha[d] resulted in rising sea levels, causing harm to the Cities." *Id.* at 906. The defendants argued "that the Cities' state-law claim implicates a variety of 'federal interests,' including energy policy, national security, and foreign policy." *Id.* at 906-07. The Ninth Circuit concluded that the state-law claims were insubstantial because implication of policy concerns "does not raise a substantial question of federal law for the purpose of determining whether there is jurisdiction under § 1331." *Id.* at 907. The Court further reasoned that whether the defendants' "activities amount to public nuisance would require factual determinations, and a state-law claim that is 'fact-bound and situation-specific'" alone does not confer federal question jurisdiction. *Id.* (citations omitted).

More recently, in *Negrete v. City of Oakland*, 46 F.4th 811 (9th Cir. 2022), the Ninth Circuit held that federal question jurisdiction did not exist when terminated police officers "sought a writ of mandate and declaratory relief in state court." *Id.* at 814. City officers were ultimately terminated based on a compliance director's recommendation; this compliance director was authorized by a federal consent decree to direct disciplinary compliance. *Id.* The officers alleged that the City violated the city charter and municipal code and that the discipline committee lack jurisdiction or authority to impose discipline. *Id.* at 819. The Ninth Circuit reasoned that the officers' claims did not "necessarily raise" a federal issue because the consent decree was "not an 'essential element' of any of the officers' claims." *Id.* at 819. The Ninth Circuit also concluded that, even though the consent decree enforced by the federal district court required the City to give effect to the compliance director's recommendations, this "would not establish that federal law *creates* the officers' claims." *Id.* at 817 (emphasis in original)*; see also id.* ("It is 'settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and

1   even if both parties concede that the federal defense is the only question truly at issue.'"

2   (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987))).

3       Another judge in this district has also assessed subject matter jurisdiction under

4   § 1331 of state-law only actions using the four-part test. In *Arizona v. Volkswagen AG*, 193

5   F. Supp. 3d 1025 (D. Ariz. 2016), the district court held it did not have jurisdiction of an

6   AZCFA claim against Volkswagen for its marketing of diesel vehicles as "clean" and

7   "green." 193 F. Supp. 3d at 1029. The defendant argued that the AZCFA claim turned on

8   federal law emission standards. *Id.* at 1026-27. The district court found the federal issue

9   not a "necessary element" and reasoned that Arizona could prevail without proving a

10  violation of federal law existed. *Id.* at 1028. Specifically, Arizona could "prevail simply by

11  comparing the Clean Diesel vehicles to gasoline powered vehicles and proving, in that

12  context, Volkswagen's advertisements and statements were misleading." *Id.* at 1029.

13      Using these cases as signposts, the Court addresses each requirement of the four-part

14  test with the facts alleged here.

15      **B.    Necessarily Raised**

16      GSK argues that the complaint "asserts just one basis" for finding GSK's conduct

17  as an "unfair act or practice" under the AZCFA—GSK's conduct allegedly violated the

18  "public policy" set forth in the MDRP. (Doc. 1 at 4-5; Doc. 14 at 4-6.) The State argues

19  that GSK's alleged violation of the MDRP public policy is not a necessary element of the

20  State's claim, but supportive evidence of the unfair practice. (Doc. 12 at 5-7.)

21      "When a claim can be supported by alternative and independent theories—one of

22  which is a state law theory and one of which is a federal law theory—federal question

23  jurisdiction does not attach because federal law is not a necessary element of the claim."

24  *Bank of Am. Corp.*, 673 F.3d at 675 (citation modified). A federal issue that "would

25  inevitably arise" and "may involve a federal issue" does not "necessarily raise" the federal

26  question when the issue raised is not an "essential element" of the claim. *Negrete*, 46 F.4th

27  at 819.

28      In its complaint, the State alleges that "Defendant's conduct, including each sale of

the Authorized Generic into the State, was an unfair act or practice under the [AZCFA], because it violated established public policy and substantially injured consumers." (Doc. 1-3 at ¶ 131.) The State claims that instead of reducing the price of Flovent, GSK dropped Flovent and continued to sell the Authorized Generic at an inflated price ("Flovent Renaming Scheme"). (*Id.* ¶ 9.) The Flovent Renaming Scheme allegedly injured Arizona consumers by "forcing them to pay inflated prices for critical medication" and "preventing them from being able to obtain, or easily obtain, appropriate asthma medication." (*Id.* ¶¶ 9, 132-34.) The State argues that "[i]t is public policy, as set forth in the [MDRP] at 42 U.S.C. § 1396r-8, that drug manufacturers shall not be able to both profit from selling to Medicaid and grossly inflate the prices of their prescription drugs" and that this public policy was violated by "grossly" inflating the Authorized Generic to "evad[e] the *quid pro quo* of paying the inflationary rebate" under the MDRP. (*Id.* ¶¶ 135-36.)

Arizona Revised Statute § 44-1522 provides:

> A. The act, use or employment by any person of any deception, deceptive or *unfair act or practice*, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.
>
> B. The violation of chapter 9, article 16 or chapter 19, article 1 of this title is declared to be an unlawful practice and subject to enforcement under this article.
>
> C. It is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code sections 45, 52 and 55(a)(1).

(Emphasis added.)

Under the AZCFA, courts may use the Federal Trade Commission's ("FTC") test for unjustified injury to consumers to determine whether an act is unfair. A.R.S.

- 8 -

§ 44-152(C). Specifically, unfairness exists when the acts or practices cause unjustified injury to consumers. *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1072 (1984). The FTC considers three factors when determining whether consumer injury is unjustified: (1) "the injury must be substantial"; (2) "the injury must not be outweighed by any offsetting consumer or competitive benefits that the sales practices also produces"; and (3) "the injury must be one which consumers could not reasonably have avoided." *Id.* at 1073-74.

GSK argues that the complaint alleges that the "unfair practice" relies on GSK's alleged violation of the MDRP public policy. (Doc. 14 at 5-6.) The State argues that the AZCFA claim could proceed without any analysis of the MDRP because the FTC unfairness test focuses only on the injury to consumers, not a violation of the MDRP. (Doc. 12 at 5-7.) The State also argues that GSK's defense that it did not violate the federal law, (*see* Doc. 1 at 4), is insufficient to confer federal question jurisdiction. (Doc. 12 at 7.)

The federal issue raised here is "pivotal" to the State's case. *See Bank of Am. Corp.*, 672 F.3d at 675. The federal issue alleged stems from GSK's alleged violation of the MDRP public policy. (Doc. 1-3 ¶¶ 131, 135, 136.) The State's complaint repeatedly alleges GSK's motivation for withdrawing Flovent from the market was to avoid paying the excess rebate. (*See* Doc. 1-3 ¶ 4 ("GSK did so to avoid the obligation to pay rebates to Medicaid under the [MDRP]."); *id.* ¶ 7 ("GSK was faced with the prospect of having to pay more to Medicaid in rebates that it would earn from sales of the drug to Medicaid."); *id* ¶¶ 69-89, 130-36.)

The State's AZCFA claim requires a court to analyze GSK's business decisions and conduct in light of the changes to the MDRP, but the claim does not necessarily rely on the violation of MDRP public policy. The second factor of the FTC unfairness test reviews whether the injury is outweighed "by any offsetting consumer or competitive benefits that the sales practices also produce." *In re Int'l Harvester Co.*, 104 F.T.C. at 1073. Here, to perform this analysis, a court must examine GSK's sales practices—those of which the State alleges were motivated by the changes in the MDRP. At oral argument, the State even acknowledged that the MDRP is "highly relevant" because it was a motivating factor for

GSK's "scheme." (Doc. 20.) These facts, however, are similar to *Volkswagen AG*, where Arizona alleged that Volkswagen misrepresented the diesel vehicles as "clean, green, and good for the environment," which could be proved by comparing the pollution of diesel vehicles to gas-powered vehicles, not necessarily by a violation of federal emission standards. 193 F. Supp. 3d at 1029 (citation modified). Though the State repeatedly stated in its complaint and at oral argument that GSK did not "play by the rules," (*see* Doc. 20; *see also* Doc. 1-3 ¶¶ 60-89.), a violation of MDRP public policy is not *necessary* to determine unfair practices in violation of the AZCFA. A court could simply review GSK's business decisions, motivation, and conduct without analyzing whether GSK violated MDRP public policy to determine if an AZCFA violation occurred.

One could argue that the State's complaint suffers from artful pleading. The State spills much ink detailing how GSK "does not play by [Medicaid's] rules," (Doc. 1-3 ¶¶ 60-89), and even includes gratuitous public commentary from politicians chastising GSK for its alleged "scheme." (*Id.* ¶¶ 46, 57, 117-22.) Yet, instead of alleging a direct violation of the MDRP, the State surmises that GSK's conduct violated a public policy incorporated in the AZCFA, which in turn unfairly injured consumers. (*Id.* ¶¶ 123-42.) In the end, the State's claim here is more like the claim in *Bank of America,* where "the gravamen of the [c]omplaint" was that the defendant allegedly violated Nevada's consumer protection statute though numerous alleged misrepresentations, some (but not all) of which were related to applications of federal law. 672 F.3d at 675. The gravamen of this complaint is an alleged violation of the AZCFA, where GSK's discontinuation of Flovent and continued offering of the Authorized Generic at a "high" price—which *may be* related to GSK's alleged motivation to avoid paying a higher rebate to Medicaid—unfairly injured Arizona consumers. Moreover, the State correctly identifies that GSK's defense that the MDRP does not prohibit it from its actions is not enough to "necessarily raise" a federal issue. *See Negrete*, 46 F.4th at 817.

The Court therefore finds the federal issue here is not necessarily raised.

### C.    Actually Disputed

The parties disagree over whether GSK violated the public policy of the MDRP. (Doc. 12 at 7; Doc. 14 at 6-7.) Whether the federal issue is a "central point of dispute" means that the issue is "actually disputed." *Gunn*, 568 U.S. at 259-60; *see also Grable*, 545 U.S. at 316 ("It is plain that a controversy respecting the construction and effect of the federal laws is involved." (citation modified)).

The Court finds the federal issue here is therefore "actually disputed." *See, e.g.*, *Gunn*, 568 U.S. at 259-60 (concluding the patent law experimental-use exception applied—the merits of the "central point of dispute"—was "actually disputed" between the parties).

### D.    Substantial

GSK argues that interpretation of the MDRP public policy has significant implications for the functioning of the Medicaid program. (Doc. 14 at 7-9.) Specifically, the interpretation of the policy will inform whether manufactures will be forced to continue selling prescription drugs, even at a loss. (*Id.*) GSK also argues that the interpretation raises constitutionality concerns—if the State's interpretation is true, then drug manufactures participating in Medicaid would be required to "relinquish their products without any compensation, in violation of the Takings Clause" of the United States Constitution. (*Id.* at 8.) The State argues that the federal issue here is not substantial because the MDRP does not provide a private right of action. (Doc. 12 at 8-10 (citing *Merrell Dow Pharms. Inc.*, 478 U.S. at 806-07).)

"An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute, or when it challenges the functioning of a federal agency or program." *BP PLC*, 969 F.3d at 905 (citation modified). "Moreover, an issue may qualify as substantial when it is a pure issue of law, that directly draws into question the constitutional validity of an act of Congress, or challenges the actions of a federal agency, and a ruling on the issue is both dispositive of the case and would be controlling in numerous other cases." *Id.* (citation modified). "A federal issue is not substantial if it is fact-bound and situation-specific or raises only a hypothetical question

1    unlikely to affect interpretations of federal law in the future." *Id.* (citation modified).

2    "[T]he relevant point [is] not the importance of the question to the parties alone but rather

3    the importance more generally" to federal law. *Gunn*, 568 U.S. at 261.

4         The complaint here does not allege a violation of the MDRP itself, but a violation

5    of the *public policy* behind the statute. (*See* Doc. 1-3 ¶¶ 131, 135-36.) The State alleges

6    that GSK's "conduct, including each sale of the Authorized Generic into the State, was an

7    unfair act or practice under the [AZCFA], because it violated established *public policy* and

8    substantially injured consumers." (Doc. 1-3 ¶ 131 (emphasis added).) The complaint

9    provides "[i]t is *public policy*, as set forth in [MDRP] at 42 U.S.C. § 1396r-8, that drug

10   manufacturers shall not be able to both profit from selling to Medicaid and grossly inflate

11   the prices of their prescription drug." (*Id.* ¶ 135 (emphasis added).) "Defendant violated

12   that public policy by selling Flovent and the Authorized Generic at a grossly inflated price,

13   while evading the *quid pro quo* of paying the inflationary rebate." (*Id.* ¶ 136.) Meaning,

14   the State is not alleging a violation of the MDRP per se, but a violation of the spirit of the

15   MDRP.

16        Though GSK argues that the State's interpretation of the MDRP public policy would

17   be akin to a violation of the Takings Clause, this interpretation is not exactly what the State

18   alleges. Rather, this action is like *BP PLC*, where the Ninth Circuit held no subject matter

19   jurisdiction existed because the complaint implicated general "federal interests" of "energy

20   policy, national security, and foreign policy" instead of identifying a specific federal

21   violation. *See* 969 F.3d at 906-07. This complaint does not identify a specific violation of

22   the statute, making the federal issue here insubstantial.

23        Furthermore, like in *Gunn*, the federal issue here concerns federal law only specific

24   to these parties and may be considered, in a sense, a "hypothetical" exercise. *See* 568 U.S.

25   at 261. As discussed, the complaint focuses on GSK's conduct for discontinuing Flovent

26   and alleges that these business decisions were motivated by the changes to the MDRP. This

27   analysis requires a court to review the specific facts in this case, like GSK's announcements

28   at shareholder meetings, rather than interpret the MDRP. *See Empire Healthchoice Assur.,*

*Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (holding no jurisdiction under § 1331 over a state contract law case for reimbursement of benefits under the Federal Employees Health Benefits Act, reasoning that adjudication of the case would not require assessment of federal law, instead the reimbursement claim was "fact-bound and situation-specific").

Finally, though substantiality of the federal issue does not turn alone on whether the statute provides for a private right of action, it is relevant here. The Supreme Court clarified in *Grable* that "*Merrell Dow* should be read in its entirety as treating the absence of [a federal private right of action] as evidence as relevant to, but not dispositive of, the 'sensitive judgments about congressional intent.'" *Grable*, 545 U.S. at 318 (citation omitted). The lack of a private right of action in the MDRP, *see* 42 U.S.C. § 1396r-8, coupled with a hypothetical violation of public policy—rather than the law itself—further supports insubstantiality here.

The Court therefore finds the federal issue is not substantial.

### E.    Capable of Resolution in Federal Court

GSK argues that the federal-state balance will not be upset because the alleged AZCFA violation relies on a violation of the MDRP, a federal law. (Doc. 14 at 9-10.) The State argues it "brings this claim in its sovereign capacity, pursuant to its right to enforce its own laws in its own courts" and that removal would upset this interest. (Doc. 12 at 10-11.)

"Even where a state law claim does necessarily turn on a substantial and disputed question of federal law, removal is subject to a possible veto where exercising federal jurisdiction is not consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Bank of Am. Corp.*, 672 F.3d at 675 (citation modified).

In *Bank of America*, specific to the division of federal-state courts, the Ninth Circuit reasoned that state courts frequently handle state consumer protection statutes that refer to or are predicated on standards in federal statutes. *Id.* at 676. Unlike *Bank of America*, here, the State's premise of unfairness requires a court to understand and analyze the MDRP to

better comprehend GSK's motivations, not simply apply the FTC test referenced by the state statute. By exercising jurisdiction over this case, this Court does not threaten the State's sovereign interest in enforcing its own laws.

The Court therefore finds that if jurisdiction exists then entertaining the case will not disturb the federal-state division of labor.

## III.  CONCLUSION

The removing party has the burden of proving that subject matter jurisdiction exists. *Chevron Corp.*, 32 F.4th at 746. A failure to meet this burden means that the requirements for removal have not been met. *Id.* Here, the Court finds that GSK failed to satisfy this burden because the federal issue was neither "necessarily raised" nor "substantial." *See Gunn*, 568 U.S. at 257.

For the foregoing reasons, the Court lacks subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED**:

(1)    The State of Arizona's motion to remand (Doc. 12) is **GRANTED**. The Clerk of Court is directed to **REMAND** this matter to the Arizona Superior Court in Maricopa County.

(2) Defendant GlaxoSmithKline LLC's motion to dismiss (Doc. 13) remains pending for the Superior Court.

(3) The Clerk of Court is directed to close this federal case.

Dated this 26th day of August, 2025.

Michael T. Liburdi
United States District Judge